George G. SANTA MARIA, Plaintiff,

v.

**METRO–NORTH COMMUTER RAILROAD, Defendant.**

**In re Joseph SMUKLER.**

**No. 91 Civ. 1239 (KTD).**

United States District Court, S.D. New York.

Feb. 27, 1995.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., Elkan Abramowitz, of counsel, Skadden, Arps, Slate, Meagher & Flom, Wendy Fleishman, of counsel, New York City, for Joseph Smukler.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

This is a motion to vacate a finding of contempt against Joseph Smukler, a lawyer who had been engaged in the trial of *George G. Santa Maria v. Metro–North Commuter Railroad*, 91 Civ. 1239 (KTD) which commenced on January 23, 1995. The facts underlying the contempt are fairly simple. All counsel who regularly appear in the Southern District of New York are aware that in arguing evidentiary rulings they cannot state, before the jury, things as fact without proof nor even an expectation of proof. The contemnor continued to violate this rule throughout the trial and also engaged in other improper courtroom antics. Additionally, Mr. Smukler appeared as trial counsel in this case despite the fact that he is not a member of the bar of this district. This, along with other improprieties which will be discussed below, formed the background for the contempt finding.

Joseph Smukler was held in contempt on the morning of the fourth day of the trial. Mr. Smukler wished to dispute an evidentiary ruling by arguing that he had knowledge that the facts as given by the witness were not true. He did not ask for a side bar, but rather, argued directly to the jury, as if in summation, facts that clearly were not part of the record.

Since this occurred at the time for the morning break, I determined that I would hear the argument outside the hearing of the jury rather than to continue to expose them to the contemnor's impermissible arguments.

For the many years that I have been on the bench, I have always instructed counsel to remain seated while the jury enters and leaves the courtroom. This practice is occasioned because of an incident which occurred before I became a judge.[1] This trial was no different. On every occasion in which there was a break, I excused the jury and instructed counsel for both parties to sit or remain seated. Thus, what Mr. Smukler did on the fourth day of trial is all the more egregious.

What actually happened is not adequately shown by the cold record. The contemnor, after receiving the contrary ruling from the court let out a grunt of exasperation throwing out his hands and looking at the jury. Although directed to sit down by me, he chose not to do so and, instead, momentarily blocked the jury's path to make sure that they were aware of his exasperation. The first juror in line found his way around Mr. Smukler. As the other jurors were filing from the jury box, Mr. Smukler was again told to sit down. Again he refused to do so. He finally sat down only after being directed to take his seat for a third time and the court advised the Marshal to assist him to sit down. In fact, he had continued standing in place as the jury left while the Marshal had to walk some thirty-five to forty feet to escort him to his seat.

The entire display was obviously intended to cause a mistrial in the case since the contemnor, working for a contingent fee, clearly understood that his case was being lost by his own ineptitude and lack of understanding of the rules of evidence, unpreparedness, and general lack of competence.

My determination as to Mr. Smukler's desire to obtain a mistrial is based not only on his demeanor, but also on the fact that during the cross-examination of his own witnesses, he was caught as he continually sought to signal them what answer was to be provided to the cross-examiner's question. This was done by Mr. Smukler nodding yes

1. Simply put, while I was still an active litigator, my opponent was standing while the jury was walking from the courtroom, and he inadvertently stepped on the forelady's toe, stumbling into her and almost knocking her down. I wondered whether the successful result my client obtained in that case was due to abilities of counsel or to the toe-stubbing inflicted by my opponent.

and no to obtain either an affirmative or negative answer from the witness.[2]

After holding Mr. Smukler in contempt pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure, I gave him the opportunity to compose himself prior to imposing sanctions and took the usual morning break. Since I had a real question as to Mr. Smukler's competence, I determined that it would be fair to permit him some type of representation and asked about the availability of C.J.A. counsel on duty that day. Clearly it appeared to me that a court should not impose a sanction on a lawyer, or on anyone else, without hearing from the person to be sanctioned or his lawyer as to what explanation there may be, if any, for the sanctionable conduct.

Upon returning to the courtroom, I advised Mr. Smukler that C.J.A. counsel would be available to him. Mr. Smukler's only desire at that time was to obtain a mistrial of the case and he argued that he had "never been threatened with contempt, never, ever, ever" in the forty or fifty times he had tried cases in this District.

He also indicated the person with him at counsel table was not a member of the Bar. Over the lunch recess, I initiated a search to see if Joseph Smukler had ever been admitted to the Bar of this court. I had expected that anyone who had tried forty to fifty cases in this court would have been so admitted. The Clerk advised me, half-way through the afternoon session, that Mr. Smukler was not so admitted. I permitted the trial to continue as I had the entire case file and docket sheet searched to determine if Mr. Smukler had been admitted *pro hoc vice*. He had not been so admitted. In fact, he stated he had never been admitted to the Bar of this court and contended there was no reason for him to be admitted *pro hoc vice*, apparently since nobody had questioned him the years during which he practiced in this court without admission. He even suggested there was no need for a *pro hoc vice* motion because the court had impliedly given him permission by allowing him to appear at a pre-trial conference.

At the end of that Thursday, January 26, 1995, I advised the jury to return the following Monday. I further told Mr. Smukler that he could not continue with the case since he was not a member of the Bar of this court and directed him to have counsel of record present to continue the case on Monday. By this time Mr. Smukler had met the C.J.A. attorney on duty and had decided to obtain private counsel. He requested that the question of sanctions be put over. I agreed to hold off until the next day.

The matter was adjourned to the following morning to permit Mr. Smukler time to consult with private counsel. On Friday, January 27, 1995, Wendy Fleishman, Esq., from Skadden, Arps, Slate, Meagher & Flom appeared in court and requested a further adjournment of the sentencing of Mr. Smukler which was granted. Counsel also argued that Mr. Smukler had "a right" to continue the trial of the *Santa Maria* case. When it was pointed out to counsel that this meant that anyone, no matter how untrained in the law would have a right to appear as counsel in any case in this District, the argument was dropped although it now seems to have been resurrected. Counsel requested and obtained an adjournment of the sentence until Tuesday, February 14, 1995 at 4:30 p.m.

On February 14, 1995, twenty-five minutes prior to the time set for hearing, approximately twenty-four pages of legal argument along with what appeared to be an intentionally misleading affidavit signed by Mr. Smukler was served on the court. The matter was again adjourned.

The gist of the argument raised in the latest submissions by counsel for Mr. Smukler simply stated is that because I attempted to give the contemnor an opportunity to consult with counsel before imposing sanctions, the matter was changed from a Rule 42(a) contempt to a Rule 42(b) contempt, thus requiring another hearing before some other judge. I must say that taking some of the statements of appellate courts out of context one could conclude that such an argument has some arguable basis in the law. I do not believe, however, that there is any validity to

---

**2.** Two witnesses to Mr. Smukler's actions so tes-      tified.

such an argument, but I do recognize that for at least some appellate judges, contempt is a tightly choreographed minuet where a trial judge can be reversed for any missed step or missed beat.

There is absolutely no doubt in my mind that Joseph Smukler was in contempt of court and deserves to be punished, but I do question the efficacy of continuing this proceeding. Smukler has hired partners from two separate leading law firms in New York City;[3] and at least one of the firms must also be using the services of one or more associates on Mr. Smukler's behalf. While it has been many years since I was directly involved in the economic aspects of the practice of law, I am convinced that these firms do not work for minuscule hourly rates. The maximum that Mr. Smukler would be fined would be from $100 to $250. Yet, his legal fees will far exceed that amount. Not only has he expended monies, but he failed to obtain his portion of what he viewed as most likely a juicy settlement of Mr. Santa Maria's claim against of Metro–North.

In the interests of judicial efficiency, I see no reason to prolong this matter any further. In a district court, such as the Southern District of New York, there is little time to be wasted on the antics of people like Joseph Smukler. It would add nothing to the dignity of this court to continue this proceeding. By vacating the contempt, this court is rid of an unwanted and burdensome matter. For that reason and not those advanced by counsel for the contemnor, the holding of contempt is vacated.

SO ORDERED.

---

On Monday, January 30, 1995, Wendy Fleishman appeared in the public seats of the courtroom and observed most of the proceedings of that day. What this was intended to achieve is beyond my comprehension, but the novelty of attending real court proceedings might have brought her back.